562 So.2d 673 (1990)
STATE of Florida ex rel. Jed PITTMAN, etc., Appellant,
v.
John W. STANJESKI, Appellee.
ATTORNEY GENERAL OF FLORIDA, Robert A. Butterworth, etc., Appellant,
v.
John D'Agosto, Appellee.
Nos. 73666, 74150.
Supreme Court of Florida.
May 17, 1990.
Robert A. Butterworth, Atty. Gen., and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, for appellant.
H. James Parker, New Port Richey, for appellee John W. Stanjeski.
Wayen R. McDonough of Saliba & McDonough, P.A., Vero Beach, for appellee John D'Agosto.
Joseph R. Boyd and William H. Branch of Boyd & Branch, P.A., and Chriss Walker, Tallahassee, amicus curiae for State of Fla., Dept. of Health and Rehabilitative Services.
OVERTON, Justice.
We have for review two cases, State ex rel. Pittman v. Stanjeski, 541 So.2d 1214 (Fla. 2d DCA 1989), and Attorney General v. D'Agosto, 541 So.2d 167 (Fla. 4th DCA 1989), in which the district courts declared unconstitutional section 61.14(5), Florida Statutes (1987). The statute, as interpreted by the district courts, mandates that the circuit court clerk automatically enter a judgment for delinquent support moneys. We have jurisdiction.[1] We agree that the statute as interpreted by the district courts would be unconstitutional. We find, however, that the statute may be reasonably interpreted in a manner which provides obligors access to the courts to present common law and equitable defenses, effectively providing an opportunity to be heard and eliminating the lower courts' bases for holding the statute unconstitutional.
The issue in both of the cases consolidated in this appeal is the validity of section 61.14(5), Florida Statutes (1987), the pertinent portions of which provide:
(5)(a) When support payments are made through the local depository, an unpaid payment or installment of support which becomes due after July 1, 1987, under any support order and is delinquent shall become, after notice to the obligor and the time for response *674 contained therein as set forth in paragraph (b), a final judgment by operation of law and shall have the full force, effect, and attributes of a judgment entered by a court in this state for which execution may issue. The judgment shall be evidenced by a certified copy of the support order and a certified statement by the local depository evidencing a delinquency in support payments.
(b) When an obligor is 15 days delinquent in making a payment or installment of support, the local depository shall notify the obligor by certified mail, return receipt requested, of such delinquency and its amount. The notice shall state that failure to pay the amount of the delinquency and all other amounts which thereafter become due together with costs and a fee of $5 shall become a final judgment by operation of law against the obligor beginning 30 days after the date of such delinquency.
... .
(d) The judgment by operation of law is a final judgment as to any unpaid payment or installment of money which has accrued up to the time either party makes a motion to set aside, alter, or modify the order. The court does not have the power to set aside, alter, or modify such order, or any portion thereof, which provides for any payment of money, either for minor children or the support of a party, which has accrued prior to the filing of such motion.
(Emphasis added; footnote omitted.)
The critical issue is whether the statute requires the clerk to enter a judgment without the obligor's having an opportunity to present defenses to a judicial officer. The factual circumstances of each of the cases illustrate the constitutional problem.

Stanjeski
John and Patricia Stanjeski divorced in 1981, and the court awarded custody of their child to Mrs. Stanjeski, along with child support in the amount of $40 per week. In December, 1986, Mrs. Stanjeski allowed Mr. Stanjeski physical custody of the child, and the child remained with Mr. Stanjeski up to the time of the commencement of this action. At the time that Mr. Stanjeski received physical custody of the child, he petitioned the circuit court to change custody of the child to shared parental custody, with Mr. Stanjeski having primary custody. He also asked the court to eliminate any further child support since the child was residing with him.
Mr. Stanjeski ceased making child support payments while his child was living with him, during the pendency of the petition. Seven months after the change of custody, on July 22, 1987, while the petition was pending on the court calendar, Jed Pittman, Clerk of the Circuit Court for Pasco County, issued to Mr. Stanjeski a "Notice to Obligor of Delinquency," pursuant to section 61.14(5), Florida Statutes (1987), notifying him that his support payment was delinquent and that a judgment would be rendered against him by operation of law if he failed to pay the delinquent payment within thirty days of July 3, 1987. Mr. Stanjeski filed a petition to enjoin the entry of the judgment. The trial court granted the petition on October 14, 1987, and directed the clerk not to enter a judgment under the statute. The trial court subsequently entered a final judgment in that proceeding, finding that section 61.14(5) violates due process and deprives the petitioner of his right of access to the courts. It further directed the clerks of the circuit court for Pasco and Pinellas Counties to not record or file any final judgments pursuant to the statute and to refrain from enforcement of those judgments. On appeal, the district court affirmed. In so doing, it noted that Stanjeski
is prevented from challenging payments which have accrued prior to the time of the filing of a motion to set aside, alter, or modify an existing support order. Although the statute does give the obligor the right to file a response to the notice of delinquency, it is silent as to the procedure to be followed upon the filing of the response. Thus, the clerk of the court could enter judgment and file a lien against the obligor's property regardless *675 of the fact that the obligor had filed a response. The silence of the statute on the effect of the filing of a response, coupled with the provision in subsection (d) that the trial court does not have the power to set aside, alter, or modify any support payment that has accrued, works to deny an obligor his day in court to raise any equitable defenses he may have to the delinquency.
Stanjeski, 541 So.2d at 1216. That court also distinguished People ex rel. Sheppard v. Money, 124 Ill.2d 265, 124 Ill.Dec. 561, 529 N.E.2d 542 (1988), stating that the Illinois statute "was held to satisfy due process requirements because, inter alia, `[p]rejudgment and postjudgment hearings are provided for by the Act... . Thus, the obligor has the right to challenge any determination through the courts... .'" Stanjeski, 541 So.2d at 1217 (quoting Money, 124 Ill.2d at 276, 124 Ill.Dec. at 566, 529 N.E.2d at 547 (citations omitted)).

D'Agosto
John D'Agosto and his wife divorced in 1976, and the court awarded the wife custody of the child and child support in the amount of $40 semimonthly. In 1984 or 1985, the child came to live with Mr. D'Agosto permanently, but Mr. D'Agosto never acted to have the court modify the divorce decree or to inform the court of the child's new residence. Mr. D'Agosto ceased making child support payments after he took over the custody of the child without the court's permission. Because Mr. D'Agosto did not make his July 10, 1987, payment into the court depository, on August 12, 1987, the Clerk of the Circuit Court for Indian River County sent D'Agosto a certified letter, in accordance with the provisions of section 61.14(5), notifying him that his payments were delinquent and that the provisions of the statute would be applicable to him if he did not make his payment before August 27, 1987.
On August 21, 1987, Mr. D'Agosto filed three claims in the circuit court against the clerk, requesting a writ of prohibition, a writ of certiorari, and declaratory relief. He also filed a motion to stay implementation of the statute and a motion to declare the statute unconstitutional, contending that the statute violates both the United States and Florida constitutions. The court dismissed the first two claims and resolved the case on the declaratory relief count by granting summary judgment in favor of Mr. D'Agosto. The trial judge's final summary judgment, quoted extensively by the district court, states:
"The statute provides that when an obligor is 15 days delinquent in making a payment of support, the local depository (Clerk) shall notify the obligor by certified mail, and upon the satisfaction of the notice requirements, a Final Judgment of Delinquency will be entered and a lien recorded against realty beginning 30 days after the date of such delinquency. During the pendency of the abbreviated time span of receiving notice (presuming the obligor does receive same) and the date the final judgment is rendered, the obligor is not given an opportunity to be heard, to present or confront witnesses against him or to produce evidence pertaining to the matter at hand. The statute violates both substantive and procedural due process in that an obligor will be deprived of a constitutionally protected property right without having an opportunity to be heard on the matter."
D'Agosto, 541 So.2d at 168-69 (citations omitted). The trial judge concluded by finding that "`[t]he subject statute precludes an obligor from having his ... day in Court to present evidence pertaining to any number of recognized equitable defenses including set-off, acquiescence, laches, estoppel, and waiver.'" Id. at 169 (citations omitted). The district court of appeal, in affirming the trial judge, expressly adopted his analysis and findings.

Constitutionality of Section 61.14(5)
The statutory provision at issue provides that an unpaid support payment which becomes due after July 1, 1987, shall become a final judgment by operation of law after notice to the obligor from the clerk of the court. The statute directs the clerk to provide a notice by certified mail if payment is fifteen days delinquent, and the amount of the delinquency becomes a judgment *676 by operation of law entered by the clerk thirty days after the delinquency occurs. The statute expressly allows the obligor to file a "response." Once the clerk has recorded a certified copy of the judgment, it, like any other judgment, creates a lien against real property. The statute also states, in section 61.14(5)(a)3, that a court may not modify any order for support as to any unpaid installments which have accrued up to the time either party makes a motion to set aside, alter, or modify the support order.
In the instant cases, the trial courts and the district courts of appeal have interpreted the statute in a manner which directs the clerk to enter judgment without a hearing and without providing an obligor an opportunity to present any defenses contained in his response prior to the delinquent payment's becoming a "judgment by operation of law." Further, those courts interpret the provision that a court may not alter or modify any unpaid installments which have accrued up to the time either party makes a motion to change a support order to mean that all common law defenses are eliminated. By interpreting the statute in this manner, those courts have found that the statute violates (1) the access to courts provision, article I, section 21, of the Florida Constitution, because it eliminates existing common law defenses without establishing an alternative means to present them; (2) the due process clause, article I, section 9, of the Florida Constitution, because it fails to provide for a hearing prior to the entry of a judgment; and (3) the separation of powers provision, article II, section 3, of the Florida Constitution, because it fails to allow the courts to correct judgments for fraud, mistake, and other grounds set forth in Florida Rule of Civil Procedure 1.540.
The state first asserts that a delinquent obligor is not entitled to a hearing concerning his delinquent child support because that support is vested in the payee or the child and, thus, the obligor is not entitled to go to court and to have this vested payment modified or negated. The state argues that the delinquent obligor had an opportunity for access to the courts at the time the support order was entered and that an obligor has no constitutional right of access to the courts when the delinquent support payment is to become a judgment by operation of law.
The state argues in the alternative that section 61.14(5)(a) does allow an opportunity to be heard before the entry of a judgment and that section 61.14(5)(d) need not be interpreted to prohibit rule 1.540 relief after judgment or to deny the ability of an obligor to present defenses in judgment enforcement proceedings. With regard to section 61.14(5)(a), the state asserts that the part of this subsection giving the obligor the right to file a "response" can be reasonably interpreted to mean that when an obligor files a response, the response should be considered by a judge. The state notes that the statute does not prohibit this type of hearing. With regard to section 61.14(5)(d), the state submits that the courts below incorrectly interpreted this provision and contends that the legislature never intended that the relief provided by rule 1.540 under the narrow grounds of fraud and mistake and under the other grounds articulated by the rule[2] was to be *677 prohibited by the statute. The state also acknowledges that both of the critical provisions which led the courts to declare the statute unconstitutional can be interpreted to allow certain common law defenses to be presented whenever the obligee seeks to enforce the judgment.
The interpretation of the subject statute is critical to the constitutional issue presented by these cases. We have a "duty if reasonably possible ... to adopt a reasonable interpretation of a statute which removes it farthest from constitutional infirmity." Corn v. State, 332 So.2d 4, 8 (Fla. 1976) (footnote omitted). In interpreting a statute under constitutional challenge, we also have a responsibility to "avoid declaring a statute unconstitutional if such statute can be fairly construed in a constitutional manner." Sandlin v. Criminal Justice Standards & Training Comm'n, 531 So.2d 1344, 1346 (Fla. 1988) (citation omitted).
The enforcement of child support has become a major governmental concern in the last twenty-five years. It is a problem fueled in part by the increasingly transient nature of our society. In many instances, when obligors fail to pay support, payees are discouraged from seeking enforcement because they are unable to hire legal counsel, they believe that seeking enforcement would be futile, or, in some instances, they believe that welfare programs will pay them as much as they would receive in support, even if they received such support regularly. The 1980 census reflected that 75% of all children in single parent households received no support from their noncustodial parents, National Conference of State Legislatures, In the Best Interest of the Child: A Guide to State Child Support and Paternity Laws at iv (1982), and, in the early 1980's, the Office of Child Support Enforcement, United States Department of Health and Human Services, reported that almost 87% of all children receiving Aid for Dependent Children were eligible for welfare because a living parent failed to pay support. Note, Child Support Enforcement: Balancing Increased Federal Involvement with Procedural Due Process, 19 Suffolk U.L.Rev. 687, 687 n. 1 (1985). These statistics are some of the significant reasons why courts and federal and state legislative bodies have enacted new rules and legislation which strongly emphasize the development of more effective and efficient processes to enforce support orders. Courts have an interest in the issue because they wish to see their orders enforced, and legislative bodies have a fiscal interest because it has been clearly demonstrated that, when there is effective enforcement of support orders against obligors, government payments for Aid to Families with Dependent Children are substantially reduced. All branches of government have a public policy interest in the maintenance and support of minor children.
The United States Congress, through legislation, has directed the states to aggressively establish child support collection programs and to implement some strong enforcement techniques. When these programs are implemented by state statutes, rules, and administrative action in accordance with federal statutes and regulations, states receive a financial reward by having a portion of the cost of these programs funded by the federal government. See 42 U.S.C. § 652(a) (1982 & Supp. III 1985).
The federal legislation also requires that the state support enforcement programs follow certain procedures to ensure effectiveness and to provide procedural due process. In the early 1980's, some federal courts found that certain federally mandated enforcement procedures violated procedural due process standards, particularly with regard to the notice and hearing requirements of the tax refund intercept program. See Coughlin v. Regan, 584 F. Supp. 697 (D.Me. 1984); Marcello v. Regan, 574 F. Supp. 586 (D.R.I. 1983); Nelson v. Regan, 560 F. Supp. 1101 (D.Conn. 1983), aff'd, 731 F.2d 105 (2d Cir.), cert. denied, 469 U.S. 853, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984); Sorenson v. Secretary of Treasury, *678 557 F. Supp. 729 (W.D.Wash. 1982), aff'd, 752 F.2d 1433 (9th Cir.1985), aff'd, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986). However, the Child Support Enforcement Amendments of 1984, Pub.L. No. 98-378, require that the child support enforcement programs meet procedural due process standards. 42 U.S.C. § 666 (Supp. III 1985). With that caveat, the amendments direct each state to adopt certain procedures to "increase the effectiveness of the program which the State administers." Id. Also, in 1986, Congress added further procedures which states are required to include in their support enforcement programs. 42 U.S.C. § 666(a)(9) (Supp. IV 1986).
Section 61.14(5), Florida Statutes (1987), is only a part of the Florida Legislature's support enforcement package, which was enacted in the 1987 legislative session in an attempt to bring Florida into full compliance with the 1984 and 1986 congressional acts and implementing federal regulations, thus avoiding a loss of federal funds for the Aid to Families with Dependent Children program. See Staff of Fla.S.Comm. on Judiciary-Civ., CS for SB 631 (1987) Staff Analysis 1 (final May 11, 1987) (available at Fla. Dep't of State, Div. of Archives, ser. 18, carton 1627, Tallahassee, Fla.); Staff of Fla.H.R.Comm. on Judiciary, CS for SB 631 (1987) Staff Analysis 1 (final June 11, 1987) (available at Fla. Dep't of State, Div. of Archives, ser. 19, carton 1603, Tallahassee, Fla.).
This Court has a long history of support for effective child support collection procedures. More than forty years ago, in Pottinger v. Pottinger, 133 Fla. 442, 182 So. 762 (1938), we addressed a noncustodial father's claim that his past due child support payments were not vested rights in the payee because the trial court had the authority to change "orders touching the care, custody and maintenance of the children of the marriage." Id. at 446, 182 So. at 763 (quoting § 4993, C.G.L. 1927). We rejected that claim and found that "such sums constitute vested property rights of which the party cannot be deprived except by due process of law." Id., 182 So. at 763 (citing Van Loon v. Van Loon, 132 Fla. 535, 182 So. 205 (1938)). However, we also noted that, "by virtue of the general power of a court to control its own processes the court may, for strong equitable reasons, growing out of radically changed circumstances, refuse to enforce its decree by issuance of execution or by contempt or ne exeat proceedings against a party in default." Id., 182 So. at 763. The Second District Court of Appeal applied these principles in its decision in Fox v. Haislett, 388 So.2d 1261 (Fla. 2d DCA 1980), and noted that the trial court "has no authority to cancel or reduce a past-due installment of child support," id. at 1265, but recognized that "matters of avoidance, such as estoppel, are a valid defense in an action to enforce past-due installments of child support," id., and that "in extraordinary or compelling circumstances, a court may decline to enforce such a past-due obligation." Id.
The following three equitable defenses may be appropriate grounds for relief: (1) payment  a direct payment is made to the payee because of the exigencies of the family situation or a family emergency; (2) no further obligation to pay support  a minor child reaches majority, marries, enters the armed services, or dies, or a former spouse receiving alimony remarries or dies; or (3) change of custody  a full change of child custody has occurred and the former custodial parent no longer supports the child or retains fiscal obligations relating to the child. There may be other equitable defenses that can be raised based on other types of extraordinary circumstances. We emphasize that the underlying purpose of this process is to assure the payment of child support for the welfare of the child.
We agree with the state that section 61.14(5) can be reasonably construed in a constitutional manner. We emphasize that this statute is just one part of the overall scheme for the collection of support. We find that section 61.14(5)(a) and (b) should be interpreted to allow for a hearing prior to the entry of a "final judgment by operation of law," provided that the obligor timely files a response. To comply with due process requirements, the notice to the obligor *679 should advise that a response must be filed by a specified date or a judgment will be entered against the obligor. We find no due process problem with the utilization of certified mail as a means to give notice under the circumstances where the obligor (a) was served personally in the original proceedings and (b) was directed to provide the clerk with his mailing address and any subsequent changes to that address. We interpret the provision allowing for the filing of a response to necessarily include an opportunity for a hearing, and we find that the hearing should be before a judicial officer assigned for this type of proceeding.[3] The clerk may mail notice of that hearing to the obligor. Further, we hold that the obligor may present equitable defenses at that hearing. To hold otherwise would deny the obligor an opportunity to be heard before entry of a judgment and thus would violate the access to the courts provision of the Florida Constitution and the due process clauses of both the Florida and United States constitutions.
With regard to section 61.14(5)(d), we interpret the asserted prohibitory language, "[t]he court does not have the power to set aside, alter, or modify such order or any portion thereof," as doing no more than codifying the existing law of this state concerning the vested rights of a custodial parent, as expressed in Pottinger and Fox. We find, as the state acknowledged, that an obligor may still assert all the equitable defenses under law in any enforcement proceeding and that, in certain circumstances, an obligor's past due payments can be canceled. See Pottinger; Fox.
Further, we find that the legislature, by its enactment of section 61.14(5)(d), did not intend to prohibit the application of rule 1.540 to any judgment entered in accordance with section 61.14(5)(a) and (b). To hold otherwise would mean that the legislature intended to prohibit the court from correcting its own judgments that were entered on the basis of fraud, clerical mistake, or the other narrow grounds enumerated in rule 1.540. We find that such a construction would be totally unreasonable. Courts have generally had the inherent authority to correct a judgment on most of the grounds set forth in rule 1.540. We note that the legislature has subsequently made clear its intention not to preclude such relief by amending the subject statute in 1988 to add the following sentence: "This paragraph does not prohibit the court from providing relief from the judgment pursuant to Florida Rule of Civil Procedure 1.540." § 61.14(5)(d), Fla. Stat. (Supp. 1988).
In summary, (1) we reject the state's contention that a delinquent obligor has no right of access to the courts to present common law and equitable defenses before the entry of a judgment, but we recognize that a vested right exists in the payee or child for delinquent support payments; (2) we hold that an obligor must have an opportunity, after filing a timely response, to present defenses to a judicial officer before the entry of a judgment; (3) we hold that, in an enforcement proceeding after judgment, an obligor may present common law defenses; and (4) we hold that an obligor may utilize rule 1.540 proceedings. We conclude that section 61.14(5), Florida Statutes (1987), as we have interpreted it, is constitutional.

The Instant Cases
With regard to Stanjeski, we find that no judgment should have been entered prior to a disposition of the motion for change of custody which in this case was filed substantially prior to the notice to Stanjeski that he was delinquent in child support payments. The motion should have been disposed of long before the delinquency claim became an issue in this proceeding. The trial court clearly has jurisdiction to adjust and alter child support *680 payments based on the change-in-custody circumstances. Under these circumstances, the clerk had no authority to enter a judgment of delinquency, and, consequently, the results of the district court and trial court decisions are approved.
With regard to D'Agosto, nothing in this record establishes that D'Agosto filed any motion with the court to show that custody had been changed prior to the institution of the delinquency proceedings. The child support system cannot work properly when the parties involved with the custody and support of minor children fail to notify the court when there is a substantial change in circumstances, particularly a change of custody. We find that D'Agosto should be provided fifteen days from the date of the issuance of the mandate from this Court to file the necessary response reflecting the change of custody of the minor child in this proceeding and asserting that change as a defense to the delinquent support payments. The Fourth District Court of Appeal's decision is quashed, and this cause must be remanded for further proceedings.
For the reasons expressed, we find that section 61.14(5), Florida Statutes (1987), as interpreted and construed in this opinion, is constitutional; and, accordingly, we quash the decisions of the district courts holding to the contrary. The district courts are directed to remand these causes to the trial courts with directions to proceed in accordance with the views contained in this opinion.
It is so ordered.
EHRLICH, C.J., and McDONALD, SHAW, BARKETT and GRIMES, JJ., concur.
KOGAN, J., concurs in result only.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] The relevant portion of Florida Rule of Civil Procedure 1.540 reads as follows:

(a) Clerical Mistakes. Clerical mistakes in judgments, decrees or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal such mistakes may be so corrected before the record on appeal is docketed in the appellate court and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, decree, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment or decree is void; (5) the judgment or decree has been satisfied, released or discharged or a prior judgment or decree upon which it is based has been reversed or otherwise vacated or it is no longer equitable that the judgment or decree should have prospective application... .
[3] To make the process work, the hearing on the response should administratively be set on a judge's calendar within a reasonably short period of time, preferably within 30 days, and in no event should the hearing on the response be delayed more than 45 days, to be consistent with the purpose of the overall congressional and legislative support collection scheme. In this regard, it may be necessary for each chief judge to establish local administrative procedures that will allow clerks to obtain block hearing dates from the local judiciary so that a hearing date may immediately be set upon receipt of a response.