948 So.2d 855 (2007)
The STATE of Florida, DEPARTMENT OF REVENUE on behalf of Gladys ORTEGA, Appellant,
v.
Leonel ORTEGA, Appellee.
No. 3D05-1037.
District Court of Appeal of Florida, Third District.
January 31, 2007.
Bill McCollum, Attorney General, and William Branch, Assistant Attorney General, Tallahassee, for appellant.
Roetzel & Andress and Robert G. Menzies, Naples, and Pam Ellen Hudson, for appellee.
Before WELLS, SUAREZ, and ROTHENBERG, JJ.
WELLS, Judge.
The Department of Revenue (DOR) on behalf of Gladys Ortega appeals from an order granting a credit to Leonel Ortega on his child support obligation. We reverse.
On March 30, 1989, a final judgment was entered dissolving Leonel and Gladys Ortega's marriage. That judgment, among other things, obligated Mr. Ortega *856 to pay an unallocated $100 per week in child support for the parties' two children, providing:
The Respondent, LEONEL ORTEGA is to pay $100.00 a week directly to the Central Depository as Child Support payments by means of an Income Deduction Order.
In August 1993, Mr. Ortega was held in contempt for his failure to satisfy the child support obligations ordered in the final judgment of dissolution of marriage and ordered to "continue to timely pay $100 per week, for child support." In August 1998, Mr. Ortega was again found to be in arrears, this time in the amount of $15,747.29, and ordered to continue to pay the $100 in unallocated weekly child support.[1]
Although the parties' eldest child had turned eighteen the year before this last order was entered, Mr. Ortega neither sought to modify the final judgment to terminate his support obligation for this child nor did he otherwise seek to reduce the amount that he owed in support for both children. The August 1998 order was not appealed.
Approximately six years after this order was entered, Mr. Ortega was notified by the DOR that it was going to suspend his driver's license for non-payment of child support. In response, Mr. Ortega sought a credit against the arrearages he owed, pointing to the fact that his eldest daughter had attained majority years earlier. The request was granted:
Over the States objection the Court grants the Obligor credit at the rate of $50.00 per week back to the date that the child, . . ., born on October 10, 1979 became emancipated on October 10, 1997. The State argues that no modification has been filed by the Obligor and that the underlying order is not allocated. Based on a recalculation of child support at the rate of $50.00 per week (instead of $100.00 per week) back to October 10, 1997, the Obligor is entitled to a credit of $19,400. (388 weeks time $50.00 per week) against the arrears of $21,575.72 as of March 11, 2005. The Obligor is entitled to further credit of $2,677.00 for health insurance provided for the children. After applying the credit, the arrears are determined at zero as of March 11, 2005.
It is well established that a trial court may, in its discretion, award lump sum support for two or more children, rather than award a separate amount of support for each child, and that the parent paying such unallocated support "has the duty to petition the court to reduce the amount when one child attains majority." State v. Segrera, 661 So.2d 922, 923 (Fla. 3d DCA 1995); Hammond v. Hammond, 492 So.2d 837, 838 (Fla. 5th DCA 1986) (confirming that a trial court may award lump sum child support for several children and when it does so, the payor parent must "petition for an order reducing the amount when one child attains majority"). It is equally well settled that because support obligations become the vested rights of the payee and vested obligations of the payor at the time the payments are due, child support payments are not subject to retroactive modification:
This Court has a long history of support for effective child support collection procedures. *857 More than forty years ago, in Pottinger v. Pottinger, 133 Fla. 442, 182 So. 762 (1938), we addressed a noncustodial father's claim that his past due child support payments were not vested rights in the payee because the trial court had the authority to change "orders touching the care, custody and maintenance of the children of the marriage." Id. at 446, 182 So. at 763 (quoting § 4993, C.G.L.1927). We rejected that claim and found that "such sums constitute vested property rights of which the party cannot be deprived except by due process of law." Id., 182 So. at 763 (citing Van Loon v. Van Loon, 132 Fla. 535, 182 So. 205 (1938)). However, we also noted that, "by virtue of the general power of a court to control its own processes the court may, for strong equitable reasons, growing out of radically changed circumstances, refuse to enforce its decree by issuance of execution or by contempt or ne exeat proceedings against a party in default." Id., 182 So. at 763. The Second District Court of Appeal applied these principles in its decision in Fox v. Haislett, 388 So.2d 1261 (Fla. 2d DCA 1980), and noted that the trial court "has no authority to cancel or reduce a past-due installment of child support," id. at 1265. . . .
State ex rel. Pittman v. Stanjeski, 562 So.2d 673, 678 (Fla.1990); Segrera, 661 So.2d at 923 ("child support payments may only be modified prospectively and are not subject to retroactive modifications").
While the Florida Supreme Court has recognized an exception to the general prohibition against retroactive modification where no further support obligation exists because a child has attained majority, Stanjeski, 562 So.2d at 678, that exception does not apply to the instant unallocated award.
In McClung v. McClung, 760 So.2d 244, 246 (Fla. 3d DCA 2000), this court concluded that a payor parent was entitled to a retroactive modification of support from the time one child attained majority because we construed the parties' agreement (incorporated into a final judgment) not to provide for unallocated support. In doing so, we were careful to distinguish those authorities that refused to retroactively modify an unallocated support award from the case then before us involving what we determined to be an allocated award:
The Department asserts that the trial court erred in its construction of the parties' agreement. It maintains that the child support was unallocated based upon the language of paragraph 15 of the parties' agreement which states that: "The Husband shall pay to the Wife, for the support and maintenance of the minor children of the parties, the sum of $400 per month." This provision, the Department asserts, is virtually identical to language utilized in other cases which have found the awarded child support to be unallocated. See, e.g., State, Dep't of Health and Rehabilitative Servs., Child Support Enforcement v. Whaley, 624 So.2d 367 (Fla. 3d DCA 1993); State, Dep't. of Health and Rehabilitative Servs., Office of Child Support Enforcement ex rel. Worthy v. Carwell, 524 So.2d 484 (Fla. 2d DCA 1988); Hammond v. Hammond, 492 So.2d 837 (Fla. 5th DCA 1986).
We disagree.
Based upon our de novo review of the parties' agreement, we believe that paragraphs 15 and 18 must be construed together in order to give full effect to each. See Durham Tropical Land Corp. v. Sun Garden Sales Co., 106 Fla. 429, 138 So. 21 (1931). When that is done, we conclude, as did the trial court, that the parties intended for the child *858 support payments to be allocated between each child such that upon the occurrence of one of the qualifying events listed in paragraph 18, the former husband would only be obligated to pay the former wife $200.00 per month for the remaining child. We are compelled to reach this conclusion because paragraph 18 speaks in terms of the former husband's financial obligation to each child individually as opposed to the children collectively. For that reason, the cases relied upon by the Department are readily distinguishable. See, e.g., Whaley, 624 So.2d at 367 (child support unallocated where parties agreed that former husband would pay former wife $1,500 per month as child support for the parties' two children and agreement further provided that "said child support payments shall continue until the youngest child shall have attained the age of 18 years, dies, marries or becomes emancipated."); Carwell, 524 So.2d at 484 (trial court erred in modifying child support following "the death of one of two children for whom the father had acknowledged paternity where the final judgment of paternity specified that the child support would continue until the minor children die, marry, become self-supporting or emancipated"); Hammond, 492 So.2d at 837 (child support unallocated where the final judgment of dissolution ordered the former husband to pay "`as child support the sum of $182.00 per week, . . . for the support and maintenance of the minor children . . . until such time as both minor children become 18 years of age[.]'").
McClung, 760 So.2d at 245-246 (footnotes omitted).
Similarly, the Fourth District in Porro v. Porro, 864 So.2d 1205 (Fla. 4th DCA 2004), remanded for determination on the merits, a payor parent's request for retroactive modification of support premised on majority of one or more of the children subject to the support award. There, as in McClung, the award was allocated.[2]
These decisions recognize that an unallocated award, unlike an allocated award, does not terminate by operation of law when a child attains majority but terminates at a later (or other) date either agreed upon or ordered:
DOR argues that the trial court lacked authority to retroactively terminate child support beyond the date the former husband filed his motion for modification. We agree. Generally, a parent is not legally bound to support his or her children beyond the age of 18, unless the parent agrees to do so in a binding contract or unless one of the exceptions in section 743.07, Florida Statutes, applies. Madson v. Madson, 636 So.2d 759 (Fla. 2d DCA 1994); Hunter v. Hunter, 626 So.2d 1069 (Fla. 1st DCA 1993); Carbonell v. Carbonell, 618 So.2d 326 (Fla. 3d DCA 1993). However, when the trial court, in its discretion, orders a lump sum support payment for more than one child, the obligor parent has the affirmative duty to seek a reduction as each child reaches majority. Dept. of Health and Rehabilitative Services v. Beckwith, 624 So.2d 395, 399 (Fla. 5th DCA 1993); State, Dept. of Health and Rehabilitative Services, Worthy v. Carwell, 524 So.2d 484, 485 (Fla. 2d DCA 1988); Hammond v. Hammond, 492 So.2d 837, 838 (Fla. 5th DCA 1986). The parent must continue to make full *859 support payments until he or she successfully obtains modification, and the payments vest when they are due. State, Dept. of Revenue, Child Support Enforcement v. Segrera, 661 So.2d 922 (Fla. 3d DCA 1995).
In the instant case the final order of dissolution provided for a lump sum support payment for the four children. The former husband therefore had the duty to petition the court for modification as each child reached majority and was required to make payments in full until the court granted his requests. Because the payments vested when they were due, the trial court could not retroactively terminate support to a date earlier than 1 December 1995 absent a showing of extraordinary circumstances. Segrera; Kutz v. Fankhanel, 608 So.2d 873 (Fla. 5th DCA 1992); Dept. of Health and Rehabilitative Services v. Atterberry, 578 So.2d 485 (Fla. 5th DCA 1991). "The fact that one child has reached majority is not a sufficient compelling circumstance. . . ." Hammond, 492 So.2d at 839.
Dep't of Revenue on Behalf of Hall v. Hall, 699 So.2d 1036, 1037-1038 (Fla. 5th DCA 1997) (footnote omitted).
Here, as in Hall, in place is an unmodified final judgment with an unallocated child support obligation of $100 per week which by its terms is not subject to reduction simply because one of the children attained majority, married or died. In this case, no petition for modification has been filed nor has any evidence been taken on which the trial court could determine whether modification of this unallocated support award "was appropriate and in the best interest of the remaining minor child." Hammond, 492 So.2d at 839. As was explained in Hammond, "there are cases in which the support awarded for several children is not sufficient in amount, but is all that the spouse can afford to pay. Therefore, to require an equal division for each child and an automatic reduction in the amount upon each child reaching majority would be inadequate in such cases." Id. at 838. Moreover, "some expenses pertaining to child support remain constant regardless of the number of children involved, so to automatically reduce the child support when one child reaches majority by his or her portion of the whole could create an inequitable result." Id. at 839. Under the circumstances of this case, no automatic credit, amounting to a retroactive modification of this unallocated support award, was justified. See Puglia v. Puglia, 600 So.2d 484, 485 (Fla. 3d DCA 1992) (confirming that "[c]redits towards child support arrearages have the appearance of a retroactive modification, and if so, constitute error").
Accordingly, the order under appeal granting Mr. Ortega a "credit" based on his eldest child having reached majority is reversed and the cause remanded for reinstatement of the arrearage award.
NOTES
[1] A hearing officer's recommended order, ratified by the court, provided:

The Obligor shall pay $100.00, weekly for CHILD SUPPORT, commencing with the next regularly scheduled payment, until the minor child(ren) should die, marry, become emancipated, or is/are otherwise no longer (a) dependent child(ren) pursuant to Sections 409.2554(2) and 743.07(2) Florida Statutes.
[2] The agreement in Porro expressly authorized recalculation of the support obligation "upon any of the minor children reaching the age of majority, so that the apportionment of . . . monthly payments towards support and arrearages may be determined." Porro, 864 So.2d at 1207.