(No. 65710.—

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* BARBARA SHEPPARD, Appellant, v. JOHN MONEY, Appellee.

*Opinion filed September 22, 1988.*

266

Richard M. Daley, State's Attorney, of Chicago (Deborah Petro, Assistant State's Attorney, of Chicago, of counsel), for appellant.

No appearance for appellee.

Lee J. Schwartz and Deborah G. Heilizer, of Sidley & Austin, of Chicago, for *amicus curiae* Illinois Task Force On Child Support.

JUSTICE STAMOS delivered the opinion of the court:

This appeal is from a *sua sponte* holding by a judge of the circuit court of Cook County that section 20 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, par. 2520) is unconstitutional. That section provides for withholding of income to secure payment of child support. The appeal comes to this court pursuant to Rule 302(a). (107 Ill. 2d R. 302(a).) We reverse and remand with directions.

The issues presented are:

1. Whether section 20 provides sufficient due process protections to an obligor and a payor.

2. Whether section 20 violates the doctrine of separation of powers.

3. Whether the circuit court properly determined the amount of monthly child support.

## FACTS

On March 16, 1987, Barbara Sheppard, a public aid recipient, filed a complaint through the Cook County State's Attorney's office to determine the existence of a father-child relationship between her minor son and the defendant, John Money. The complaint was brought under the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, par. 2501 *et seq.*). The complaint named John Money as the natural father of Sheppard's son and sought an order for child support.

Defendant was served by substituted service upon a member of his household over the age of 13 years, namely, "Moh. Brother Jerry," on April 2, 1987. The return date was May 1, 1987.

Defendant failed to appear, and an order of default was entered. The cause was set for prove up on June 24, 1987, and notice of that hearing date was sent to the defendant at his last known place of residence.

The defendant failed to appear on June 24, 1987. An *ex parte* hearing was conducted, and the court entered an adjudication of paternity and an order for support in the amount of $76.50 per month. The amount of support ordered by the court was equal to the monthly amount that the State incurred as damages because Sheppard received public aid.

The State also sought entry of an order for income withholding pursuant to section 20 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, par. 2520) and, apparently in anticipation of denial of that request, filed a motion to stay any refusal to enter the withholding order. Both motions were denied on July 17, 1987.

The trial court *sua sponte* held section 20 unconstitutional because: (1) the procedures deprived the defendant-obligor and an employer-payor of due process; and (2) the wage-withholding provisions amount to an improper delegation of powers in violation of the doctrine of separation of powers.

The Cook County State's Attorney has briefed and argued a number of points, citing only the authority of the Act. A brief, urging reversal of the circuit court's holding, has been filed by the Illinois Task Force on Child Support as *amicus curiae*. The *amicus curiae* also contends that the trial court erroneously determined the amount of monthly child support. Appellee has failed to appear or file a brief in this court.

## OPINION
### Background

A parent's duty to support his or her minor child is among the oldest principles of law. (See 1 W. Blackstone,

Commentaries *446, 447.) This duty has been a traditional source of State child support statutes and concomitant enforcement procedures.

The statutory section declared unconstitutional in the case *sub judice* is contained in the Illinois Parentage Act of 1984 (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 2501 *et seq.*). However, the present controversy has its roots in a series of congressional actions. Congress' increased involvement in the area of child welfare and support is reflected in several amendments to the Social Security Act enacted over the past several years. (Social Security Amendments of 1967, Pub. L. No. 90—248, 81 Stat. 821 (1968); Social Security Amendments of 1974, Pub. L. No. 93—647, 88 Stat. 2337 (1975).) Despite these past amendments, it became increasingly clear that a more disciplined and uniform approach to the national child support crisis and implementation of effective enforcement techniques were needed. (H.R. Rep. No. 925, 98th Cong., 2d Sess. 31 (1984); S. Rep. No. 387, 98th Cong., 2d Sess. 27 (1984).) Recently, Congress enacted the Child Support Enforcement Amendments of 1984 (the Amendments). Pub. L. No. 98—378, codified at 42 U.S.C. §666 (Supp. III 1985).

The Amendments amended title IV—D of the Social Security Act to require States to aid the enforcement of child support for families who receive Aid to Families with Dependent Children (AFDC) as well as families who do not receive AFDC. A State's receipt of Federal AFDC funds is conditioned upon the State's compliance with the new laws. 42 U.S.C. §§601 *et seq.*, 651 *et seq.* (1982 & Supp. III 1985).

Under the Amendments, States are required to implement procedures for income withholding as a method of enforcing child support orders. (42 U.S.C. §§666(a), (b) (Supp. III 1985).) The Amendments and accompanying Federal regulations, issued by the Department of Health

and Human Services, require that all child support orders issued or modified after October 1, 1985, contain a provision for withholding from noncustodial parents' wages or other income of an amount sufficient to cover those parents' support obligations. (45 C.F.R. §302.70(a)(8) (1986).) The Amendments also mandate implementation of a number of other specific remedies and procedures to improve child support enforcement programs (*e.g.*, expedited processes; State and Federal income tax offsets for overdue support and interception of refunds; imposition of real or personal property liens; paternity determinations; posting of security bonds or guarantees of payment by absent parents; and reports of overdue support to consumer reporting agencies). (42 U.S.C. §666 (Supp. III 1985).) In cases in which the custodial parent seeks support enforcement through the State's title IV–D agency, as in the instant case, the procedure for income withholding must be triggered whenever the absent parent fails to make payments amounting to one month's support (see 45 C.F.R. §303.100(a)(4)(b)(1) (1986)) or when the noncustodial parent requests earlier withholding. Significantly, withholding "must occur without the need for any amendment to the support order *** or for any further action *** by the court or entity that issued [it]." 42 U.S.C. §666(b)(2) (Supp. III 1985); 45 C.F.R. §303.100(a)(4) (1986).

The instant cause concerns only the mandatory income-withholding provisions of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, par. 2501 *et seq.*), enacted pursuant to the congressional mandate.

The congressional intent is unmistakable. Congress sought the establishment of a speedy and simple method for the withholding of wages or other income. As will be seen, these expedited procedures, provided for in Illinois' statutory scheme, contain built-in due process safeguards to protect the rights of all parties involved.

Our General Assembly, in enacting the Act, together with corresponding amendments to provisions in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 706.1), the Revised Uniform Reciprocal Enforcement of Support Act (Ill. Rev. Stat. 1987, ch. 40, par. 1226.1 *et seq.*), and the Illinois Public Aid Code (Ill. Rev. Stat. 1987, ch. 23, par. 10—16.2 *et seq.*), complied with the Federal mandate. See *In re Matt* (1985), 105 Ill. 2d 330.

The Act fulfills an important social need in terms of declaring an obligation of support and improving Illinois' method of enforcement of support obligations. In the instant case, there is no question, at least directly, concerning the defendant's duty to support his child. Rather, the sole issue before us is whether the income-withholding provision contained in the Act is constitutional.

First, we note that the circuit court failed to accord the legislature the proper deference. Legislative enactments enjoy a heavy presumption of constitutionality. (*County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 216; *People v. Joseph* (1986), 113 Ill. 2d 36, 41.) Thus, courts must construe statutes to avoid constitutional infirmity (*Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363) and infringement on the judicial power (*People v. Flores* (1984), 104 Ill. 2d 40, 46-50). Courts have a duty to sustain legislation wherever possible and resolve all doubts in favor of constitutional validity. *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 148.

## Statutory Scheme

Basically, the Act provides three ways to obtain an order for income withholding once the court has entered an order for child support and the obligated parent becomes delinquent: (1) the court enters the order (section

20(B)(1)), (2) the obligee or public office petitions the court for entry of an order for income withholding (section 20(B)(2)), or (3) the obligee or public office prepares and serves a proposed order for withholding, subject to approval and entry by the court (section 20(K)). Ill. Rev. Stat. 1987, ch. 40, pars. 2520(B)(1), (B)(2), (K).

An "obligor" is an individual who owes a duty to make payments under an order of support (section 20(A)(5)). An "obligee" means the individual to whom a duty of support is owed or the individual's legal representative (section 20(A)(6)). A "payor" is defined as any payor of income to an obligor (section 20(A)(7)). Ill. Rev. Stat. 1987, ch. 40, pars. 2520(A)(5), (A)(6), (A)(7).

Section 20(B)(1), one of the key provisions of the Act, provides in pertinent part:

> "(1) Upon entry of any order for support on or after July 1, 1985, the court *shall* enter a separate order for withholding which shall not take effect unless the obligor becomes delinquent in paying the order for support or the obligor requests an earlier effective date; except that the court may require the order for withholding to take effect immediately." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 40, par. 2520(B)(1).[1]

In the instant case, the circuit court did not enter an order for income withholding and the State proceeded

---

[1] Public Act 85—1156 amends section 20(B)(1) of the Act, *inter alia*, and provides:

"On or after January 1, 1989, the court shall require the order for withholding to take effect immediately, unless a written agreement is reached between both parties providing for an alternative arrangement, approved by the court, which insures payment of support. In that case, the court shall enter the order for withholding which will not take effect unless the obligor becomes delinquent in paying the order for support. Application of the provisions of this paragraph is subject to the discretion of the court in all cases wherein an order for support is entered prior to January 1, 1989." Pub. Act 85—1156, eff. Jan. 1, 1989 (amending Ill. Rev. Stat. 1987, ch. 40, par. 2520).

under section 20(B)(2). That section provides: "[A]n order for withholding *shall* be entered upon petition by the obligee or public office where an order for withholding has not been previously entered." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 40, par. 2520(B)(2).) These provisions are mandatory and not discretionary.

This court has previously held that, generally, use of the word "shall" indicates a mandatory obligation unless the statute indicates otherwise. (See *People v. Gerke* (1988), 123 Ill. 2d 85, 94.) Here, the statutory language is clear. The section expresses a clear legislative intent that income withholding be the rule, not the exception, whenever an absent or recalcitrant parent falls behind in support payments. Thus, the circuit court's refusal to enter the order for withholding upon the State's petition was in violation of the Act.

The circuit court concluded, *sua sponte*, that the procedures for income withholding unconstitutionally deprived the obligor and payor of due process of law. The circuit court further held that section 20 usurps the judicial function in violation of the separation of powers doctrine.

## Due Process

We will first address the issue of whether the defendant obligor receives sufficient notice and opportunity to be heard in order to satisfy due process requirements.

Generally, procedural due process consists of a right to notice and an opportunity to be heard. An individual whose interest is at stake must be given "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657.) The fundamental requirement of due process is the

opportunity to be heard at a meaningful time and in a meaningful manner. (*Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 47 L. Ed. 2d 18, 32, 96 S. Ct. 893, 902.) The linchpin of due process analysis is the recognition of the flexibility of the doctrine in light of the demands of the particular situation. *Morrissey v. Brewer* (1972), 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600.

The test for balancing the competing interests to determine the appropriate time and type of procedural protections, as set forth in *Eldridge,* requires consideration of three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute ·procedural requirement would entail." *Eldridge,* 424 U.S. at 335, 94 L. Ed. 2d at 33, 96 S. Ct. at 903.

Application of these factors leads this court to conclude that the present statutory procedures meet constitutional muster.

## 1. *Private Interests*

As to the first *Eldridge* factor, the defendant's (noncustodial parent's) interest in his or her wages or income is, of course, significant. See *Sniadach v. Family Finance Corp.* (1969), 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (a prejudgment seizure case wherein the Court stated that wages are a specialized type of property presenting distinct problems in our economic system).

The custodial parent also has a private interest in receiving child support, as does the child. Past-due install-

ments of child support are a vested right. (*Sostak v. Sostak* (1983), 113 Ill. App. 3d 954, 958; *Dorsey v. Dorsey* (1980), 86 Ill. App. 3d 1043, 1045.) Moreover, interests lie in the obvious needs of the custodial parents and their children for swift establishment and rapid enforcement of support obligations.

## 2. *Risk of Erroneous Deprivation*

The second *Eldridge* factor, the need for additional safeguards to prevent error, concerns the adequacy of the statutory procedures in light of the action taken. Here, the risk of erroneous deprivation has been minimized as much as possible and the value of additional safeguards would be outweighed by their costs. The amount due for support is determined by the court. The arrearage or delinquency (the triggering event) is simply a matter of record keeping and calculations.

Prejudgment and post-judgment hearings are provided for by the Act. The defendant-obligor may petition the court for a stay of withholding whereby he or she can raise the issue of whether the amount of arrearage or delinquency is accurate. (Ill. Rev. Stat. 1987, ch. 40, par. 2520(D).) Thus, the obligor has the right to challenge any determination through the courts and to have withholding cancelled or modified.

In sum, no further procedural safeguards are necessary because of the low risk of error, the simplicity of the issue, the authority of the agency and, most importantly, recourse to the courts. (See *Jahn v. Regan* (E.D. Mich. 1984), 584 F. Supp. 399, 415 (*Jahn* I); *Jahn v. Regan* (E.D. Mich. 1985), 610 F. Supp. 1269 (*Jahn* II).) A prior award of child support for minor children is not final and unalterable and does not preclude reconsideration and adjustment thereafter. Ill. Rev. Stat. 1987, ch. 40, par. 2516.

### 3. *Governmental Interest*

As to the third *Eldridge* factor, concerning the State's interest, Illinois has a strong interest in preserving and promoting the welfare of children. (Ill. Rev. Stat. 1987, ch. 40, par. 2501.1 ("Public Policy").) Indeed, it is difficult to imagine a more compelling State interest than the support of children. Illinois also has a general interest in effective enforcement of judgments. And the State has a fiscal and administrative interest in reducing the costs and burdens of these procedures. The State also has a significant financial interest in obtaining payment in accordance with the court-ordered support obligations. The money collected is to repay the State for AFDC benefits which have been paid by the State to the custodial parent or child. (Ill. Rev. Stat. 1987, ch. 40, par. 2515.) These facts warrant a finding that additional procedural burdens need not be imposed on the State.

By law, whenever the custodial parent is a recipient of AFDC funds on behalf of a minor child or children, that parent must assign to the State his or her rights to an obligation owed by the parent who is responsible for providing support to the minor child or children. (42 U.S.C. §602(a)(26) (Supp. III 1985); see *Jahn v. Regan* (E.D. Mich. 1984), 584 F. Supp. 399, 401-02 (*Jahn* I).) Thus, the State has the same rights by assignment as the AFDC recipient had to the support owed or owing to the child or children. Accordingly, the State is reimbursed after it has performed the support duties that the absent or recalcitrant parent neglected. (Ill. Rev. Stat. 1987, ch. 40, par. 2515.) Thus, the State has an interest in enforcing court-mandated child support obligations and recouping money spent to support children where absent parents do not fulfill their obligations. The State becomes a real party in interest. Protection of public funds becomes yet another of the State's major goals.

Moreover, by permitting the State office to collect these payments, the AFDC program will continue to be funded and its integrity and purpose maintained. *Jahn* I, 584 F. Supp. at 402.

In the instant case, the circuit court opined that:

"[The procedures] are so limited that protection is not afforded in the most basic questions, *e.g.*, same name, wrong defendant, improper service, etc. It is readily forseable [*sic*] that a brick on one's check will remain while there is a long search for the file and the support order. All wage withholding and support orders as a result of a default hearing will be dormant for some period of time and some for great lengths of time where no defense will exist."

These fears are unfounded. First, the order for withholding does not become effective unless the obligor becomes delinquent in support obligations or requests an earlier effective date. (Ill. Rev. Stat. 1987, ch. 40, par. 2520(b).) Second, when the State proceeds under section 20(B)(2), as in the instant case, the obligor is served with copies of the support order and the order for withholding (stamped "Not Valid"). (Ill. Rev. Stat. 1987, ch. 40, par. 2520(B)(4).) If the obligor becomes delinquent in payment of an amount equal to one month's support obligation, or is 30 days late in payments, he or she is sent a verified notice of delinquency along with a copy of a form petition to be used by the obligor to stay service of the order for withholding. Ill. Rev. Stat. 1987, ch. 40, par. 2520(C)(1).

The notice of delinquency that is sent to the obligor again informs the obligor of the terms of the order for support and contains a statement of the period of time covered and a computation of the amount of delinquency. (Ill. Rev. Stat. 1987, ch. 40, par. 2520(C)(2).) That notice advises the obligor that the payor will also be sent a copy of the notice and a certified copy of the order for

withholding unless the obligor pays the delinquency or files a petition to stay service. Ill. Rev. Stat. 1987, ch. 40, par. 2520(C)(2).

Section 20(D) prescribes the procedures to avoid withholding of which the obligor is advised. (Ill. Rev. Stat. 1987, ch. 40, par. 2520(D).) Income withholding may be avoided by filing a petition to stay service (supplied to the obligor), in which case the court conducts a hearing to resolve the matter. (Ill. Rev. Stat. 1987, ch. 40, pars. 2520(D), (H).) The obligor may dispute the amount of support due and owing, the amount of the delinquency, and his or her identity. (Ill. Rev. Stat. 1987, ch. 40, pars. 2520(D)(1)(a), (D)(1)(b).) Service of the order of withholding on the payor results only if all of these notices are ignored by the obligor.

Thus, the defendant-obligor is provided with notice of hearings; his or her rights, obligations, and remedies; and most importantly, post-judgment opportunity to be heard.

In the instant case, a determination of paternity and order for child support were sought. The defendant was properly served by substituted service (Ill. Rev. Stat. 1987, ch. 110, par. 2—203(a)(2)), and therefore was advised of his opportunity to be heard (Ill. Rev. Stat. 1987, ch. 40, par. 2509.1). He failed to appear and an order of default was entered. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301(d).) Defendant was also sent a notice of the order of default. Ill. Rev. Stat. 1987, ch. 110, par. 2—1302.

Next, the cause was set for a prove up. Notice was sent to the defendant, and he again failed to appear. The matter proceeded *ex parte* and paternity was established. Plaintiff's right to child support and defendant's obligation to provide that support were then declared. Ill. Rev. Stat. 1987, ch. 40, par. 2514(f).

After the duty for support was established, defendant's status changed from a prejudgment debtor to a

post-judgment debtor, since a valid judgment that he owed child support was entered against him. (Ill. Rev. Stat. 1987, ch. 40, pars. 2514, 2515.) That judgment has the full force, effect and attributes of any other judgment including the ability to be enforced. (Ill. Rev. Stat. 1987, ch. 40, par. 2514(c).) The rights of the parties are set by the judgment. We note, parenthetically, other statutory schemes utilizing similar procedures (*e.g.*, Ill. Rev. Stat. 1987, ch. 110, par. 12—701 *et seq.* (garnishment); ch. 110, par. 12—801 *et seq.* (Illinois Wage Deduction Act)). As with garnishment proceedings, the foundation of income withholding is to reach and seize payment for what is due and owing. The "brick" on one's check is a consequence of the obligor's actions or rather, as in the instant case, inaction. The purpose of income withholding is to ensure future payments on an ongoing basis. It will no longer be easy to escape support obligations. Avoiding or neglecting one's obligation to pay child support will no longer be tolerated.

In this case, the defendant was informed of the pending matters at all three stages of concern: paternity, establishment of his support obligation, and enforcement by wage or income withholding. The facts of this case demonstrate that it is not that the Act fails to provide notices and opportunities to be heard. It is that the defendant chose to ignore them. In sum, he voluntarily failed to avail himself of his due process rights.

Therefore, we conclude that the procedures for wage withholding afford substantial protection to an obligor's interest in his or her property. Withholding does not cut off other substantive rights, as the amount of withholding may be adjusted. An obligor is not denied access to the courts. The obligor is afforded adequate notice of the opportunity to be heard at meaningful times and in a meaningful manner.

The next inquiry is whether an employer or "payor" suffers a deprivation of due process rights. We think not.

The trial court concluded that employers (or "payors") are deprived of due process because a payor is a necessary party and the court was without jurisdiction to enter an order directed against "any payor." The court refused to enter the requested income-withholding order in the absence of a name of a particular employer. We note that the record indicates that the defendant was employed at the time the complaint was filed. The Act provides that "[t]he order for withholding shall *** [d]irect any payor to withhold a dollar amount equal to the order of support." Ill. Rev. Stat. 1987, ch. 40, par. 2520(B)(3)(a).

Due process requires the joinder of all indispensable parties to an action, and an order entered without jurisdiction over a necessary party is void. *Feen v. Ray* (1985), 109 Ill. 2d 339, 344.

We must first inquire into whether an employer-payor is indeed a necessary and indispensable party to the action such that failure to join it therein rendered the order void *ab initio*.

A person is a necessary and indispensable party to the litigation when the person has an interest in the subject matter of the suit which may be materially affected by a judgment entered in the person's absence. (*Feen*, 109 Ill. 2d at 344; see Ill. Rev. Stat. 1985, ch. 110, pars. 2—404, 2—405, 2—406(a).) The relevant inquiry is not whether the court's judgment has in fact materially affected the absent individual's interests in the subject matter in controversy. Instead, it is whether the absent person might claim a substantial and present interest which determines that the person is a necessary and indispensable party. (*Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 811 (citing *Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill.

App. 3d 264, 269, *appeal denied* (1980), 79 Ill. 2d 631), *appeal denied* (1985), 108 Ill. 2d 567.) The question thus becomes whether an employer has a present interest in the matter.

Clearly, no interest of an employer is adjudicated. In AFDC cases, there are three parties to the proceedings. The State is a party because of the AFDC assignment of support rights and because the State will take the collections and use them to reimburse itself and the Federal government for benefits paid to the custodial parent. The noncustodian is a party because his or her property will be demanded in order to fulfill the imposed obligation. The custodian is also a party. Although the custodian makes an assignment to the State, it is an assignment for collection. The custodian is therefore a party to the proceeding with genuine property interests at stake. (Ill. Rev. Stat. 1987, ch. 40, par. 2515.) (In non-AFDC cases, there are two parties, the custodian and the noncustodian. The State is not a party but merely a conduit for collection. (See Roberts, *Expedited Processes and Child Support Enforcement: A Delicate Balance (Part I)*, 19 Clearinghouse Rev. 483 (1985).)) Only the due process rights of parties need be protected.

The employer-payor has no judgment entered against it. No court has determined that an employer owes the State any sums of money and the State does not claim so. Thus, as in garnishment proceedings, the payor is merely stakeholder or custodian of the funds sought to be reached. A payor is kept abreast of the proceedings by notices. (Ill. Rev. Stat. 1987, ch. 40, pars. 2520(E)(1), (E)(3), (F)(1), (F)(2), (H)(3) through (H)(5).) And the payor's rights, penalties, and duties are set forth in the Act. Ill. Rev. Stat. 1987, ch. 40, pars. 2520(G), (J).

The entry of an order for withholding directed to "any payor" is consistent with the congressional mandate and our legislative scheme. It will assure prompt

commencement of income withholding as soon as the delinquent obligor has income available. The Act defines "income" broadly. (Ill. Rev. Stat. 1987, ch. 40, par. 2520(A)(4).) Thus, the order for withholding of income to secure payment of child support must necessarily apply to numerous sources of income, not just an employer. Entry of an order for withholding directed to "any payor" is needed to accomplish the legislative goals. The order may be served as soon as practical, that is, when a payor is located or revealed.

For these reasons, an order issued to "any payor" is within the court's jurisdiction. An employer-payor is not a necessary or indispensable party in this action.

## Separation of Powers

The next issue is whether the procedures contained in the Act violate the Federal and Illinois constitutional provisions for separation of powers.

Article VI, section 1, of the Illinois Constitution of 1970 states: "The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." Judicial power is not defined in the Constitution, but all such power is granted exclusively to the court. (*People v. Jackson* (1977), 69 Ill. 2d 252, 256.) This case is not one in which a statute directly conflicts with a rule of this court. *E.g., People v. Jackson* (1977), 69 Ill. 2d 252; *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62.

Article II, section 1, of the Illinois Constitution of 1970 declares: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." The doctrine of separation of powers has been historically regarded by this court, "in theory and in practice," as meaning "that the whole power of two or more of the branches of government shall not be lodged in the same hands"; it does not contemplate that there are or should be "rigidly sepa-

rated compartments'' or "a complete divorce among the three branches of government." (*In re Estate of Barker* (1976), 63 Ill. 2d 113, 119.) The General Assembly has the power to enact laws governing judicial practice only where they do not unduly infringe upon the inherent powers of the judiciary. *People v. Callopy* (1934), 358 Ill. 11.

The procedures relating to withholding of income are entirely statutory in origin and nature. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 60.) The legislature has stated the purposes of the Act in the Act itself. "Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents \*\*\*." (Ill. Rev. Stat. 1987, ch. 40, par. 2501.1.) The purpose of the provisions for the withholding of wages or other income is obvious. The duty of support is placed where it belongs, on the shoulders of the one who owes the duty. In accordance with the Federal mandate, the Act provides an efficient mechanism for enforcement of child support obligations. "The objectives of legislation of this character are unquestionably laudable [citations], reasonable, and within the province of legislative power [citation]." (*Strukoff*, 76 Ill. 2d at 61.) The wisdom of this legislation is not before this court. *People v. J.S.* (1984), 103 Ill. 2d 395, 407.

Supreme Court Rule 1 provides in pertinent part: "The rules on proceedings in the trial court, together with the Civil Practice Law and the Code of Criminal Procedure, shall govern all proceedings in the trial court, except to the extent that the procedure in a particular kind of action is regulated by a statute other than the Civil Practice Law." (107 Ill. 2d R. 1.) Establishment of paternity, determination of child support obligations, and enforcement of those obligations are indeed regulated by a statute other than the Civil Practice Law or our rules. This court has upheld procedures where the legislature's

enactments affect proceedings in an action statutory in origin and nature as long as they do not conflict with a rule of this court. (*People v. Joseph* (1986), 113 Ill. 2d 36; *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53.) Thus, the procedural requirements of section 20 of the Act are not an unconstitutional legislative encroachment upon the judiciary.

The circuit court opined that an order for income withholding entered against "any payor," without naming a specific employer or asset holder, goes beyond the court's jurisdiction and amounts to judicial legislation, and that section 20(G) (formerly Ill. Rev. Stat. 1985, ch. 40, par. 2520(F)) improperly directs the payor to affect judgments of other courts. As indicated earlier in this opinion, a payor is not a party to this action. A court may not " 'determine the constitutionality of the provisions of an act which do not affect the parties to the cause under consideration.' " (*Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 259 (quoting *Schreiber v. County Board of School Trustees* (1964), 31 Ill. 2d 121, 125), *cert. denied sub nom. Bruton v. American National Bank & Trust Co.* (1971), 401 U.S. 928, 28 L. Ed. 2d 209, 91 S. Ct. 924.) Therefore, the trial court erred in declaring section 20 unconstitutional as it pertains to a payor.

The circuit court was also concerned that this section was violative of the doctrine of separation of powers because it effected an unconstitutional delegation of judicial power to nonjudicial personnel: (1) by authorizing the clerk to issue service of the withholding order and (2) by permitting the clerk or public office to attach a notice of delinquency specifying the amount due, in effect allegedly delegating to those officials the power to amend or supplement a judicial order. We find these concerns unwarranted.

The section does not dictate that nonjudicial personnel must resolve facts. It merely provides for expedited procedures and permits the "nonjudicial personnel" to complete ministerial functions based upon proper records. The clerks perform nothing which inherently or necessarily requires judicial determination. The authority and responsibility to make an informed final adjudication remains with the judge. (*Mathews v. Weber* (1976), 423 U.S. 261, 271, 46 L. Ed. 2d 483, 492, 96 S. Ct. 549, 554.) Under these circumstances, the statute does not unduly infringe upon the fundamental, exclusive authority of the judiciary to render judgments. *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 150.

## Child Support

Lastly, the record shows that the State sought an order for support in the amount of $76.50 per month. That sum represents the amount that the State asserted as damages.

The circuit court set the amount of monthly support at $76.50. Statutory guidelines governing the entry of orders for support and determinations of the amount of support are contained in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 101 *et seq.*) and must be followed. The Illinois Parentage Act of 1984 provides: "[I]n determining the amount of any child support award, the court shall use the guidelines and standards set forth in subsection (a) of Section 505 of the Illinois Marriage and Dissolution of Marriage Act ***." (Ill. Rev. Stat. 1987, ch. 40, par. 2514(a).) The circuit court's failure to consider these statutory guidelines in order to determine the amount of support constituted error. Thus, this cause should be remanded to the circuit court for a determination of the amount of support needed in accordance with the guidelines and rele-

vant factors set forth in the Illinois Marriage and Dissolution of Marriage Act.

## CONCLUSION

The Act provides sufficient procedural safeguards and passes constitutional muster. It provides for prejudgment and post-judgment notice and opportunity to be heard. The Act provides an efficient and constitutional mechanism for enforcement of child support obligations. It does not provide a procedural field day for defaulting noncustodial parents.

For all of the above reasons, the judgment of the circuit court is reversed. This cause is remanded to the circuit court with directions to determine the amount of child support in accordance with the statutory guidelines and to enter an order for withholding to secure payment of child support.

*Reversed and remanded*
*with directions.*