THE CITY OF EVANSTON *et al.*, Plaintiffs-Appellants, v. REGIONAL TRANSPORTATION AUTHORITY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—88—1787

Opinion filed January 30, 1991.

Jack M. Siegel, of Chicago, for appellants.

Clifford L. Weaver and Robert C. Newman, both of Burke, Bosselman & Weaver, of Chicago, for appellees.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Plaintiffs, City of Evanston, Joan W. Barr, Ann Rainey and Norris Larson (collectively referred to as Evanston), filed a complaint against defendants Regional Transportation Authority (RTA), Subur-

ban Bus Division of the RTA (PACE), National Steel Service Center, Inc. (National), and Urban Mass Transportation Administration (UMTA) which sought a declaratory judgment concerning the rights of the parties under an agreement to sell National's Evanston property to PACE, which had applied for an UMTA grant to develop a bus garage facility on the property. Evanston argues on appeal that the trial court erred in determining that National was a necessary party, in dismissing the complaint because of National's absence, and in not permitting Evanston to file a first amended complaint. Defendants argue in their cross-appeal that the trial court erred in not finding that Evanston's claim concerning the purchase price of the property was barred by *res judicata*.

Plaintiff Barr was the mayor of Evanston, and plaintiffs Rainey and Larson were Evanston aldermen. National owned property located at 2424 Oakton Street in Evanston in the M-4 Manufacturing zone. PACE applied to UMTA for a grant for the purpose of acquiring National's property for use as a "bus garage facility" operated by Nortran, which was a transportation provider under contract with PACE. Use of the property as "a bus garage maintenance and service and inspection facility" was not permitted by Evanston's zoning laws, and a special use permit would be required for such a use.

Evanston alleged the following in the complaint. The court had jurisdiction by virtue of the potential violation of "certain state and federal laws and regulations, and by virtue of the direct threat to the public health, safety and welfare" caused by the improper actions of defendants.

Evanston further alleged that under the Urban Mass Transportation Act (UMTA Act) (49 U.S.C. §1602(d) (1982)), no application for a grant to finance the acquisition or construction of facilities that would substantially affect the community would be granted without public hearings and without notice in a newspaper of general circulation in the geographic area to be served. The application had to include a certification that the applicant had: (1) afforded adequate opportunity for public hearings pursuant to adequate prior notice; (2) considered the economic, social, and environmental effects of the project; and (3) found that the project was consistent with official plans for the comprehensive development of the urban area.

Evanston further alleged that pursuant to the National Environmental Policy Act (NEPA) (42 U.S.C. §4332(1)(C) (1988)), Federal government agencies had to include in every recommendation or report on proposals for major Federal actions significantly affecting the quality of the human environment a detailed statement on: (1) the envi-

ronmental impact; (2) any adverse environmental effects which could not be avoided if the proposal were implemented; (3) alternatives; (4) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and (5) any irreversible and irretrievable commitments of resources which would be involved.

Evanston further alleged that notice was not given to it directly but instead was published in the Chicago Defender and Chicago Sun-Times newspapers. No certification was made concerning the economic, social, and environmental effects or the consistency with official development plans. The project was not consistent with such plans, and no environmental impact study was made. PACE did not apply for a special use permit and thereby bypassed all the notice and other requirements of the Evanston zoning ordinance. Evanston requested UMTA to provide an environmental impact study and statement, but UMTA took the position with which Evanston disagreed that the project came under an exclusion. UMTA's refusal to provide the statement rendered the proposed grant void.

Evanston further alleged that on March 27, 1986, the Northeastern Illinois Planning Commission (NIPC) conducted a hearing on the acquisition of the property and the construction of the garage facility at a cost of $2,352,620. The NIPC review was a condition precedent to the implementation of a grant. PACE purported by amendment to authorize its executive director to negotiate with National to purchase the property. PACE's board of directors adopted the ordinance without further action and did not specifically approve the purchase price in violation of RTA's statutory duties, and therefore the sales agreement was void.

Evanston further alleged that an appraisal it ordered valued the property at $1.425 million so that a purchase price of $2.65 million was unreasonable. The location of the facility would be detrimental because it would: (1) increase congestion on overburdened public streets; (2) deprive Evanston of the highest and best use of the property for a tax-paying manufacturing facility; (3) violate Evanston's zoning laws and comprehensive plan by allowing an inharmonious land use to be located within the corporate limits; (4) depreciate surrounding property values; and (5) interfere with the use and enjoyment of nearby residential properties.

Count I of the complaint alleged that the sales agreement was unreasonable, invalid, and against public policy because it was an abuse of discretion to pay greater than a million dollars in excess of the fair cash market value and because PACE's board of directors failed to ap-

prove the specific purchase price. Count II alleged that: (1) the sales agreement was void because of the lack of proper notice of public hearings on the acquisition of the property and because Evanston was not directly given notice of the hearings; and (2) the NIPC review was invalid because the notice of the hearing understated the amount of money involved in acquiring the property. Count III alleged that: (1) UMTA failed to provide the environmental impact statement required by NEPA (42 U.S.C. §4332(1)(C) (1988)), and the project did not come under exceptions to the environmental impact statement requirement; (2) the location of the proposed facility would be highly detrimental to the environment, the public health, and the safety of plaintiffs; and (3) UMTA's approval of the grant without consideration of the environmental impact, the traffic conditions, the comprehensive plan, and Evanston's zoning laws, was arbitrary, unreasonable, and contrary to law.

Evanston sought a declaratory judgment that: (1) the sales agreement was void; (2) if consummated, the sale of the property was void and title remained with National; (3) PACE's and UMTA's agreement to pay $2.65 million for the property was arbitrary, unreasonable, and void as against public policy; (4) the failure to provide an environmental impact statement was unlawful and rendered the sales agreement void; (5) UMTA and NIPC did not give proper notice of the review and the approval of the grant; and (6) the location and planned use of the proposed facility would be highly detrimental to the environment, public health, and the safety of plaintiffs.

Evanston also sought: (1) the temporary restraining of defendants from taking any steps to consummate the transaction including the disbursement of money; (2) upon hearing, a preliminary injunction enjoining defendants from proceeding to consummate the transaction, and, upon a full hearing, a permanent injunction; (3) if the sale occurred, a declaration that the transfer of title was void and that National had the title; and (4) if the sale was declared valid, a permanent injunction enjoining National from using the property for any purpose related to the sale.

RTA and PACE moved to dismiss the complaint on the basis of *res judicata* because the Federal district court for the Northern District of Illinois, Eastern Division, had dismissed a Federal complaint filed by Evanston on June 3, 1986, that involved the same parties and the same cause of action. The Federal complaint had named RTA, PACE, National, and UMTA as defendants, and it was substantively similar to the State complaint except that it stated that the action arose under the UMTA Act (49 U.S.C. §1601 *et seq.* (1982)) and NEPA

(42 U.S.C. §4321 *et seq.* (1988)). The Federal complaint had been dismissed on the basis that plaintiffs failed to allege the requisite standing to invoke jurisdiction, and the United States Court of Appeals for the Seventh Circuit had affirmed (*City of Evanston v. Regional Transportation Authority* (7th Cir. 1987), 825 F.2d 1121).

Prior to a ruling being made on the motion to dismiss, National moved to remove the State action to the United States District Court for the Northern District of Illinois. The motion was granted. In addition, a stipulation to dismiss National and UMTA with prejudice was "granted" by the Federal court. The action was remanded to the circuit court of Cook County about one year later. After the remand, PACE filed an amended motion to dismiss the complaint on the bases that it was barred by *res judicata* and that the allegedly necessary parties National and UMTA were absent.

Evanston filed a motion for leave to file a first amended complaint. Evanston argued that the circumstances surrounding the filing of the complaint had materially changed and that an amended complaint was required for the purpose of appropriately stating the present facts which gave rise to the cause of action.

UMTA and National were not defendants in the first amended complaint. The first amended complaint also differed from the complaint in the following respects: (1) it alleged that PACE had applied for a special use permit, that the Evanston Zoning Board of Appeals recommended that the application be denied, that the City Council of Evanston concurred in the denial, and that therefore PACE had no lawful authority to use the property as a bus garage and maintenance facility; (2) it alleged that the property was located close to a residential area; (3) it alleged that the proposed use was inconsistent with Evanston's comprehensive plan; (4) it omitted the allegation of the complaint concerning the required environmental impact statement; (5) it omitted the allegation of the complaint that the failure of the board of directors to specifically approve the purchase price rendered void the execution of the sales agreement; (6) it alleged that the expenditure of the funds was beyond the scope of defendants' lawful authority and violated the fiduciary relationship owed to the individual plaintiffs as residents and taxpayers of Evanston and of the "area of the RTA," and that the individual plaintiffs had standing to bring the action for breach of fiduciary duty owed by defendants to them as taxpayers; and (7) the prayer for relief was for: (a) a declaratory judgment that defendants' purchase was beyond their scope of authority and was a breach of the fiduciary duty owed by them to plaintiffs; (b) an order directing defendants to take appropriate action to reconvey

the property to its previous owner and to recover the funds expended for the purchase or, in the alternative, to offer the property for sale to the highest responsible bidder at a sale that was conditioned upon the use of the property for a lawful purpose permitted by Evanston's zoning laws; and (c) an order enjoining defendants from using the property as a bus garage and maintenance facility.

The trial court orally ruled that *res judicata* did not bar the claim in count I concerning the high purchase price, and it dismissed with prejudice the remainder of the complaint for failure to join National as an indispensable party. The trial court ruled that counts II and III were barred by *res judicata* and could not be cured by the first amended complaint. The trial court noted that the first amended complaint dropped the three-count approach but that its substance was essentially the same as the complaint. The trial court stated that National was a necessary party to both complaints because it would be materially affected by a judgment and because the purchase money would have to be obtained from National if the contract were voided.

In a written order, the trial court granted the motion to dismiss the complaint with prejudice, denied plaintiffs' motion for leave to file the first amended complaint, and, pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), made an express finding that there was no just reason for delaying an appeal from the dismissal with prejudice of the complaint.

Evanston first argues on appeal that the trial court erred in dismissing the complaint and requests that the action be reinstated and that Evanston be permitted to file the first amended complaint. Evanston argues that National was not a necessary party because: (1) no relief was sought in the first amended complaint from National; (2) National had been before the court and had sought and obtained its dismissal from the case; and (3) a judgment could be rendered without necessarily affecting National's rights, *i.e.*, the alternative request for relief for a resale of the property would not affect National's interests.

Defendants respond that: (1) National was a necessary party because the complaint sought: (a) to invalidate the sales agreement; (b) to have the property returned to National; and (c) to have the money returned; (2) dismissal may be warranted in the case of the absence of a necessary party who had been dismissed; (3) an order adverse to National could not be entered even though National acquiesced in its dismissal because a court does not have jurisdiction to enter an order or judgment which affects a nonparty's right or interest; and (4) the first amended complaint was not significantly different than the com-

plaint and the complaint's "defect" was not cured by the alternative request for relief because plaintiffs did not have standing "to ask the court to require acts injurious to the public fisc."

Section 2—405 of the Illinois Code of Civil Procedure (the Code) provides in part:

> "(a) Any person may be made a defendant who *** is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the controversy arose, or whom it is necessary to make a party for the complete determination or settlement of any question involved therein ***.
>
> (b) It is not necessary that each defendant be interested as to all the relief prayed for ***." Ill. Rev. Stat. 1989, ch. 110, par. 2—405.

Section 2—407 of the Code provides in part:

> "No action shall be dismissed for misjoinder of parties, or dismissed for nonjoinder of necessary parties without first affording reasonable opportunity to add them as parties." Ill. Rev. Stat. 1989, ch. 110, par. 2—407.

Section 2—616(a) of the Code provides:

> "At any time before final judgment amendments may be allowed on just and reasonable terms, *** changing the cause of action *** or adding new causes of action *** and in any matter, either of form or substance, in any *** pleading *** which may enable the plaintiff to sustain the claim for which it was intended to be brought ***." Ill. Rev. Stat. 1989, ch. 110, par. 2—616(a).

All persons with an interest in the lawsuit should be joined to allow the court to dispose of the entire controversy (*Feen v. Ray* (1985), 109 Ill. 2d 339, 347, 487 N.E.2d 619, citing *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 423, 52 N.E.2d 1000), and an absent party would not be bound by a judgment entered in the lawsuit (*Feen*, 109 Ill. 2d at 348). The relevant inquiry in determining whether a person is a necessary and indispensable party is whether the person might claim a substantial and present interest. (*People ex rel. Sheppard v. Money* (1988), 124 Ill. 2d 265, 281, 529 N.E.2d 542.) Although the failure to join an indispensable party does not deprive the court of jurisdiction over the *parties* properly before it (*Just Pants v. Bank of Ravenswood* (1985), 136 Ill. App. 3d 543, 546, 483 N.E.2d 331), a court should not proceed to a decision on the merits when an indispensable party is absent (*Feen*, 109 Ill. 2d at 348). The action should be dismissed where an indispensable party is absent due

to his dismissal pursuant to voluntary stipulation. *Feen*, 109 Ill. 2d at 348.

In *Feen* (109 Ill. 2d 339), Stuart Feen, a taxpayer, filed a complaint on behalf of Zion-Benton Township High School District 126, alleging that Fred Ray and Zion State Bank and Trust Company fraudulently deprived the district of interest on district funds. Ray, a former member of the board of education of the school district, was also an officer of the bank in which most of the district's funds were kept. Subsequent to the dismissal of plaintiff taxpayer's original complaint and three amended complaints, plaintiff stipulated to the dismissal of the defendant school district from the lawsuit. Plaintiff then filed his fourth amended complaint, omitting the school district as a defendant. Defendants Fred Ray and Zion State Bank then moved to dismiss the fourth amended complaint, contending that the school district was an indispensable party, without which the case cannot proceed. The court held that because the school district was absent, the court would be unable to dispose of the entire controversy before it and the judgment in the present case would have no binding effect upon the school district. (*Feen*, 109 Ill. 2d at 347.) The district was held to be a necessary party. (*Feen*, 109 Ill. 2d at 344-45.) Unlike *Lerner v. Zipperman* (1982), 104 Ill. App. 3d 1098, 433 N.E.2d 1072, in which a former defendant was held not to be a necessary party because he stated that he was unconcerned with the outcome of the lawsuit, the school district could not separate its interests from the lawsuit. (*Feen*, 109 Ill. 2d at 347.) In *Burt v. Board of Education of Coal City Community Unit School District No. 1* (1985), 132 Ill. App. 3d 393, 477 N.E.2d 247, a bus company that had made the lowest bid for a transportation contract with defendant board of education filed an action which sought: (1) an injunction against defendant from entering into the contract with a company (Broadway); and (2) a writ of *mandamus* requiring the board to award the contract to plaintiff. The court enjoined defendant from performing the contract with Broadway and ordered it to award the contract to plaintiff. Broadway later filed a breach of contract action against defendant who moved to vacate the trial court's order granting relief in the first lawsuit to plaintiff on the basis that Broadway had been a necessary and indispensable party to the first lawsuit.

The appellate court held that Broadway was a necessary and indispensable party under the definition given in *Consolidated Cable Utilities, Inc. v. City of Aurora* (1982), 108 Ill. App. 3d 1035, 1039, 439 N.E.2d 1272:

" 'A necessary party is one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence *** (2) to reach a decision which will protect the interests of those who are before the court *** or (3) to enable the court to make a complete determination of the controversy ***.' " (*Burt*, 132 Ill. App. 3d at 395-96.)

Broadway was held to fall within all of the three categories of necessary and indispensable party because if the court held that defendant could not perform the contract with Broadway, Broadway's rights would certainly be materially affected. (*Burt*, 132 Ill. App. 3d at 396.) In addition, it was held that Broadway's presence would protect defendant's interests and would enable the court to make a complete determination of the controversy. *Burt*, 132 Ill. App. 3d at 396.

■ National was a necessary party to the original complaint because all the relief sought would have affected National's interests as the seller of the property: a temporary restraining order and a preliminary injunction against consummating the sale, a declaratory judgment that a transfer of title was void and that National had the title, and a permanent injunction against National from using the property for any purposes related to the sale. The original complaint was therefore properly dismissed.

■ National was also a necessary party to the first amended complaint. Under *People ex rel. Sheppard v. Money* (1988), 124 Ill. 2d 265, 281, 529 N.E.2d 542, the test is not whether relief could possibly be granted without affecting the person's interests but whether the person might claim a substantial and present interest. Naturally, National would have a substantial and present interest in the lawsuit which sought, *inter alia*, to void the sales agreement to which National was a party. The trial court therefore properly denied plaintiffs' motion for leave to file the first amended complaint.

We do not reach defendants' additional arguments in support of the refusal to permit the filing of the first amended complaint that UMTA was also a necessary party, that *res judicata* barred the first amended complaint's allegation that the proper use of the property violated Evanston zoning laws, and that the request for an injunction was premature.

■ Defendants argue in their cross-appeal that the trial court erred in finding that Evanston's claim in count I challenging the purchase price was not barred by *res judicata*. But one may not cross-appeal from a judgment that was not adverse (*People ex rel. Jones v.*

*Adams* (1976), 40 Ill. App. 3d 189, 193, 350 N.E.2d 767; *People v. Bradford* (1939), 372 Ill. 63, 65, 22 N.E.2d 691; *Bullman v. Cooper* (1936), 362 Ill. 469, 471-72, 200 N.E. 173); it is the judgment rather than the reasoning of the court that is to be reviewed on appeal (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9).

The judgment of the circuit court is affirmed.

Affirmed.

RIZZI and WHITE, JJ., concur.