THE DEPARTMENT OF PUBLIC AID *ex rel.* TAMMY PEAVY, n/k/a Tammy Lawrence, Plaintiff-Appellee, v. JAMES PEAVY, Defendant-Appellant.

Second District    No. 2—98—0879

Opinion filed September 7, 1999.

John M. Nelson, of Rockford, for appellant.

James E. Ryan, Attorney General, of Chicago (Darryl B. Simko, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Respondent, James Peavy (James), appeals from the trial court's judgment in favor of the Illinois Department of Public Aid (IDPA), in the amount of $1,639 for past-due child support. James contends on appeal that (1) the trial court misinterpreted section 10—1 of the Illinois Public Aid Code (Ill. Rev. Stat. 1981, ch. 23, par. 10—1 (now 305 ILCS 5/10—1 (West 1998))) by allowing the IDPA to collect support payments from him for periods when his ex-wife, Tammy Peavy, now known as Tammy Lawrence (Tammy), did not receive public aid; (2)

the IDPA is estopped from seeking payment of the claimed arrearage; and (3) the IDPA's failure to respond to James's demand to admit facts pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216) bars the IDPA from collecting the claimed arrearage. We affirm.

James and Tammy were married in 1978. In 1979, twin daughters were born to them. Tammy filed a petition for dissolution of marriage on February 2, 1981. A dissolution order was entered on April 8, 1981, in which the court reserved the issue of James's obligation to pay child support. The IDPA filed a petition to intervene and obtain support on August 24, 1981, based on Tammy's assignment of her right to receive child support by applying for and accepting Aid to Families with Dependent Children (AFDC). Ill. Rev. Stat. 1981, ch. 23, par. 10—1. On September 14, 1981, the court granted the IDPA leave to intervene and ordered James to pay child support of $40 per week beginning September 9, 1981.

Tammy received public aid from March 1981 through June 1982 and from July 1983 through October or November 1985. The record is unclear as to exactly when she ceased receiving public aid. The total amount of aid she received was $11,227.13.

On September 15, 1988, unbeknownst to the IDPA, the trial court entered an order, pursuant to an agreement between Tammy and James, which terminated James's visitation rights, relieved James of all obligations to pay child support arrearages, and declared void all obligations to pay past, present, or future child support. Based on this order, James filed a motion on December 14, 1995, asking the court to direct the IDPA to stop intercepting his tax returns and to release him from all child support obligations. Instead of granting James's request, the court voided the order of September 15, 1988, because the IDPA was a necessary party and had not received notice of the order or the hearing that preceded it.

The IDPA then brought a petition to determine the amount of James's child support arrearage and alleged that James owed the IDPA $4,269.05. The IDPA calculated the arrearage by multiplying James's $40-per-week support obligation by the number of weeks between the date his obligation began, September 9, 1981, and the date Tammy's public aid was canceled, November 30, 1985. According to the IDPA's calculation, the total amount due from James was $8,840, which was comprised of 221 payments of $40. The IDPA then subtracted $4,570.95, the amount James had paid, to arrive at a claimed arrearage of $4,269.05.

James filed an answer and affirmative defenses to the IDPA's petition alleging that the IDPA was estopped from recovering the arrearage because of the earlier order terminating his child support obliga-

tions. He further alleged that the IDPA was barred from collecting any arrearage by *laches* and by assigning its legal interest in the past-due child support to a collection agency.

James then filed a counterclaim against the IDPA, alleging that he overpaid the IDPA and was entitled to reimbursement in the amount of $2,240.95. In calculating the amount he owed the IDPA, James multiplied his $40-per-week obligation by the number of weeks Tammy actually received public aid rather than the total number of weeks from the beginning of his obligation until the cancellation of Tammy's public aid. According to James's calculations, Tammy was on public aid for 161 weeks. Consequently, James contended that the total amount he owed the IDPA was $6,440, not $8,840. James further claimed that as of May 1997 the IDPA had collected $8,680.95 from him through payments he had made and intercepts of his tax returns.

The IDPA then prepared an updated calculation of the arrearage James allegedly owed, which it determined to be $1,639.05. This updated calculation was again based on a total amount due of $8,840, minus payments made of $7,200.95.

On January 14, 1998, James served the IDPA with a "Demand to Admit Facts" which, in pertinent part, asked the IDPA to admit the following:

"That the petitioner is entitled to a claim against the respondent limited to the time Tammy Lawrence was on public aid, i.e. from 9/9/81 to 6/30/82 and 8/1/83 to 10/31/85 at the rate of $40.00 per week."

On April 23, 1998, James filed a motion to strike the IDPA's response to the demand to admit facts on the ground that the IDPA did not timely file its response. The record does not contain a copy of the IDPA's response to the demand to admit facts or an order pertaining to the motion to strike.

At the trial court's request, the parties submitted briefs on the issue of whether Tammy's assignment of her right to collect child support covered the interim period from June 1982 to July 1983 when she did not receive public aid. On April 23, 1998, the trial court adopted the IDPA's position and ruled that Tammy's assignment of her right to collect child support covered the entire time period from September 9, 1981, through October 31, 1985, including the time when she did not receive public aid. Consequently, the court ordered judgment in the IDPA's favor of $1,639, to be paid in installments of $15 per week. James filed a motion to reconsider the order of April 23, 1998, which was denied.

James asserts that the trial court misinterpreted section 10—1 of the Illinois Public Aid Code. Ill. Rev. Stat. 1981, ch. 23, par. 10—1. In

our view, the precise issue is whether, under section 10—1, Tammy assigned to the IDPA the right to collect arrearages that had accrued at the time of the assignment as well as support obligations that came due during the time she received public aid. This appears to be an issue of first impression in Illinois, as our research has not revealed any case law directly addressing this question.

■ Statutory interpretation is a question of law. *Spear v. Board of Education of North Shore School District No. 112*, 291 Ill. App. 3d 117, 119 (1997). The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *In re Marriage of Logston*, 103 Ill. 2d 266, 277 (1984). The best way of doing so, and thus the first step in construing a statute, is to examine the language of the statute. *Logston*, 103 Ill. 2d at 277. If the language is clear, the court must give it effect without looking to extrinsic aids. *Logston*, 103 Ill. 2d at 277.

■ Congress created the Aid to Families with Dependent Children (AFDC) program when it enacted Title IV-A of the Social Security Act, which conditioned the states' receipt of federal funding for AFDC programs upon developing and maintaining a plan for distributing AFDC benefits. See 42 U.S.C. §§ 601 *et seq.* (1982). Title IV-D of the Social Security Act also required states to assist in enforcing and collecting child support for families who receive AFDC in order to receive federal AFDC funds. 42 U.S.C. §§ 651 *et seq.* (1982). Congress mandated the assignment of support rights to the states in section 602(a)(26) of the United States Code, which required a state plan to provide:

> "[A]s a condition of eligibility for aid, each applicant or recipient will be required—
>> (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed[.]" 42 U.S.C. § 602(a)(26)(A) (1982).

This mandate was echoed in the Social Security Regulations. 45 C.F.R. § 232.11(a)(1)(ii) (1981). Section 305.21 of the Social Security Regulations provided that "when a family ceases receiving assistance under the State's title IV-A plan, the assignment of support rights under 232.11 of this title terminates, except with respect to the amount of any unpaid support that has accrued under such assignment." 45 C.F.R. § 305.21 (1981).

As a result of the federal mandate, the Illinois legislature enacted the statute at issue, which reads, in pertinent part:

"It is the intent of this Code that the financial aid and social welfare services herein provided supplement rather than supplant the primary and continuing obligation of the family unit for self-support to the fullest extent permitted by the resources available to it. This primary and continuing obligation applies whether the family unit of parents and children or of husband and wife remains intact and resides in a common household or whether the unit has been broken by absence of one or more members of the unit. The obligation of the family unit is particularly applicable when a member is in necessitous circumstances and lacks the means of a livelihood compatible with health and well-being.

\* \* \*

By accepting financial aid under this Code, a spouse or a parent or other person having custody of a child shall be deemed to have made assignment to the Illinois Department [of Public Aid] for aid under Articles III, IV, V, and VII or to a local governmental unit for aid under Article VI of any and all rights, title, and interest in any support obligation up to the amount of financial aid provided. The rights to support assigned to the Illinois Department [of Public Aid] or local governmental unit shall constitute an obligation owed the State or local governmental unit by the person who is responsible for providing the support, and shall be collectible under all applicable processes." Ill. Rev. Stat. 1981, ch. 23, par. 10—1.

Recently, Congress replaced the AFDC program with block grants to the states in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104—193, 110 Stat. 2105 (1996). In so doing, Congress repealed sections 601 through 617 of the Social Security Act and replaced them with new provisions. See 42 U.S.C. § 601 *et seq.* (1994 & 1997 Supp.). Because our analysis is focused on the statutes in effect at the time Tammy assigned her rights to the IDPA, these changes do not affect our decision.

■ Before reaching the issue of what rights Tammy assigned, it is necessary to determine when she made assignments to the IDPA. We conclude that she made assignments at two separate times. According to section 10—1 of the Illinois Public Aid Code, a parent is deemed to have made an assignment to the IDPA by accepting financial aid. Ill. Rev. Stat. 1981, ch. 23, par. 10—1. Section 305.21 of the Social Security Regulations further instructs that the assignment ends when the public aid terminates. 45 C.F.R. § 305.21 (1981). Thus, Tammy's first assignment took effect when she accepted the first AFDC payment in 1981 and ended when her aid stopped in 1982. She then made a second assignment when she resumed receiving aid in July 1983. That assignment ended when her public aid ended in 1985.

This leads to the question of what rights Tammy assigned to the

IDPA. James argues that there can be no assignment for the time period from June 1982 through July 1983 when Tammy did not receive aid. Implicit in this argument is the notion that the assignments Tammy made did not include the right to collect support payments that had accrued at the time she assigned her rights to the IDPA. We disagree.

Section 10—1 requires the assignment of *"any and all* rights, title, and interest in *any* support obligation,"* limited only by the amount of financial aid provided. (Emphasis added.) Ill. Rev. Stat. 1981, ch. 23, par. 10—1. The legislature did not limit the assignment to the support obligation that came due during the period of public aid, as James would have us read the statute. Clearly, the right to collect past-due child support is a right, title, or interest in a support obligation. At the time Tammy made the second assignment in July 1983, she possessed the right to collect any unpaid support that had accrued during the previous year when she was not receiving aid. There is no question that the order requiring James to pay $40 per week in support was in effect between June 1982 and July 1983, when Tammy was not receiving public aid. Thus, when Tammy began receiving aid again in July 1983, she assigned her right to any past-due support that had accrued, in addition to her right to any support that would come due while she was receiving AFDC.

This interpretation finds support in section 602(a)(26)(A) of the United States Code which, at the time Tammy assigned her rights to the IDPA, required a state's plan to provide for the assignment of any rights to support "which have accrued at the time such assignment is executed." 42 U.S.C. § 602(a)(26)(A) (1982); see also 45 C.F.R. § 232.11(a)(1)(i), (a)(l)(ii) (1981). If section 10—1 did not require the assignment of accrued support rights, it would have violated the federal mandate, a result that would be inconsistent with the Illinois Public Aid Code.

The United States Court of Appeals for the Seventh Circuit has also held that under section 10—1 a public aid recipient assigns the rights to arrearages accrued at the time of the assignment and support payments which become due after the assignment. *In re Stovall*, 721 F.2d 1133 (7th Cir. 1983). In *Stovall*, the court determined that a child support debt was not dischargeable in bankruptcy. *Stovall*, 721 F.2d at 1135-36. In so doing, the court held that under section 602(a)(26) an aid recipient assigns arrearages accrued at the time of the assignment and support payments which come due after the assignment. *Stovall*, 721 F.2d at 1135. The court further noted that its interpretation of section 602(a)(26) was consistent with section 10—1's language providing for the assignment of " 'any and all rights,

title, and interest in any support obligation.' " *Stovall*, 721 F.2d at 1135, quoting Ill. Rev. Stat. 1981, ch. 23, par. 10—1.

Our ruling is also consistent with the State's interests in "enforcing court-mandated child support obligations and recouping money spent to support children where absent parents do not fulfill their obligations." See *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 277 (1988). Moreover, collecting required payments allows the state to continue to fund its programs for families in need of assistance. See *Sheppard*, 124 Ill. 2d at 278. Although the IDPA paid Tammy and her children over $11,000 in aid, it sought to collect from James only the amount he was required to pay under the support order. The court did not require James to shoulder an unfair burden. In fact, if we were to rule in James's favor, it is possible that he would be able to evade his obligation to pay child support for the time period at issue. Such a result would be contrary to the Public Aid Code's stated purpose of encouraging and enforcing families' self-support to the fullest extent possible.

Section 160.20 of the Illinois Administrative Code provides further support. It provides, in relevant part: "For an assignment entered into prior to October 1, 1998, the applicant assigns the Department all rights that have previously accrued and that accrue prior to the family leaving assistance." 89 Ill. Adm. Code § 160.20 (b)(1) (1999). This section was not in effect when Tammy assigned her rights to the IDPA, but it is in accord with the applicable federal mandate and our interpretation of the language of section 10—1. Because the issue is not before us, we offer no opinion concerning assignments entered into on or after October 1, 1998.

We note two cases that suggest that the IDPA is not authorized by statute to collect an arrearage that accrued prior to an application for public assistance. See *Department of Public Aid ex rel. Marshall v. Ringo*, 303 Ill. App. 3d 250, 253 (1999); *In re Marriage of Mesecher*, 272 Ill. App. 3d 73, 79 (1995). These opinions did not address the issue before this court, nor did they conduct an analysis of the statutory language. Thus, we disagree with these cases to the extent they are inconsistent with our ruling.

■ Next, James argues that the IDPA is estopped from seeking to recover unpaid child support payments pursuant to the case of *Bodine v. Bodine*, 141 Ill. App. 3d 21 (1986). This argument consists of a single sentence in James's brief without any explanation or citation to the record. We find that James has waived this argument because of its utter lack of substance and because he failed to comply with Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)). "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and coherent

arguments presented; arguments inadequately presented on appeal are waived. [Citations.] *** A reviewing court will not become an advocate for, as well as the judge of, points the appellant seeks to raise." *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991).

■ We reject James's final argument that the IDPA is barred from seeking recovery from him due to its failure to timely respond to James's demand to admit facts. James asked the IDPA to admit that the IDPA's claim against him was limited to the time Tammy actually received public aid. This is clearly a question of law, not fact. Thus the failure to respond to this demand did not result in an admission. *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 236-38 (1998). In addition, James waived this issue by failing to include citations to appropriate portions of the record and to pertinent legal authority. *Holmstrom*, 221 Ill. App. 3d at 325.

To summarize, we hold that under the versions of section 10—1 relevant to the facts of this case Tammy assigned her right to support obligations that came due while she received public aid, as well as her right to any past-due support obligations that had accrued at the time she made the assignments. Therefore, the IDPA was entitled to collect payment from James for the entire period from the beginning of his obligation until the last time Tammy received aid. James does not challenge the amount of the judgment for past-due support. Consequently, we affirm the trial court's judgment in favor of the IDPA in the amount of $1,639.

For the reasons stated, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

INGLIS and HUTCHINSON, JJ., concur.